IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CT-3202-D

SAMUEL R. JACKSON,                 )
                                   )
            Plaintiff,             )
                                   )
    v.                             )   **ORDER**
                                   )
EDDIE HART, et al.,                )
                                   )
            Defendants.            )

Samuel R. Jackson ("Jackson"), a state inmate proceeding pro se, brings this action under 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment rights. [D.E. 1]. Jackson proceeds in forma pauperis. See [D.E. 2, 4]. On March 20, 2014, the court reviewed the action pursuant to 28 U.S.C. § 1915A and allowed Jackson's claim of excessive force to proceed. See [D.E. 7]. On April 29, 2014, the court granted Jackson's motion to amend his complaint to add defendants Dr. Joseph Lightsey and nurse Pamala Henderson, medical providers at Polk Correctional Institution ("Polk"), based on medical care they provided to Jackson following the alleged incident of excessive force. [D.E. 12–13, 16].

On January 28, 2015, the court ruled on numerous motions and directed defendant Lightsey to provide Jackson with additional discovery. [D.E. 121]. On March 18, 2015, the court granted defendant Lightsey's motion for summary judgment, granted in part the remaining defendants' motion to dismiss, and extended the discovery period. [D.E. 136]. On March 27, 2015, Jackson filed a notice of interlocutory appeal [D.E. 139]. On July 27, 2015, the Fourth Circuit, finding no reversible error, affirmed in part and dismissed the remaining claims on appeal. See Jackson v. Hart, 610 F. App'x 297, 297–98 (4th Cir. 2015) (per curiam) (unpublished).

On May 26, 2015, the remaining defendants moved for summary judgment. [D.E. 150]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Jackson about the motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 153]. On May 28, 2014, having obtained permission, the remaining defendants supplemented their motion for summary judgment with additional affidavits [D.E. 157–158]. On June 8, 2015, Jackson filed a cross-motion for summary judgment [D.E. 160], to which defendants responded in opposition [D.E. 161]. Jackson also seeks recusal of the undersigned [D.E. 165–66] and has filed a motion for costs [D.E. 173].[1] As explained below, the court grants defendants' motion for summary judgment and denies Jackson's motions.

I.

First, the court addresses Jackson's motions for recusal. Jackson asserts that the court's rulings to date in this case "are biased, arbitrary and unconstitutional" and requests transfer of this proceeding to another judge in this district who is presiding over another of Jackson's cases. [D.E. 165] 1–2. Jackson's allegations are baseless. See, e.g., Liteky v. United States, 510 U.S. 540, 552–55 (1994); Belue v. Leventhal, 640 F.3d 567, 572–73 (4th Cir. 2011); United States v. Cherry, 330 F.3d 658, 665–66 (4th Cir. 2003). A judge need not recuse "simply because of unsupported, irrational or highly tenuous speculation." Cherry, 330 F.3d at 665 (quotation omitted). Moreover, merely ruling against a party does not show impartiality or bias; adverse rulings "are proper grounds for appeal, not for recusal." Liteky, 510 U.S. at 555; see Belue, 640 F.3d 574. Thus, the court denies the recusal motions.

---

[1] The motion for costs lacks merit and is denied. See 28 U.S.C. § 1920; Fed. R. Civ. 54(d)(1); Local Civil Rule 54.1.

II.

Jackson's remaining claims arise out of a "routine cell search," which Jackson states resulted in a use of force incident on April 24, 2013, at Polk. Compl. [D.E. 1] 3, 6. Jackson states that the search occurred "at appx. 20:37PM." Id. Jackson alleges that defendants Hart and Hargrove conducted the search while Jackson "stood placidly beside[] . . . Cozart in a corner" outside the cell while handcuffed. Id. 3; see id. 6; Gouldman Aff., Ex. A [D.E. 150-2] 17–19 (Jackson's witness statement during investigation); Hart Aff. [D.E. 150-3] ¶ 4; Cozart Aff. [D.E. 158] ¶ 4. Jackson alleges that Hart "made a comment to [Jackson,]" and, when Jackson replied, "I don't care what you shakedown: do your job," "Hart whirled grabbed [Jackson's] neck and forcefully and repeatedly slammed [Jackson's] head against the wall" while Jackson remained in handcuffs. Compl. 3, 6. Hart denies using force on Jackson. Hart Aff. ¶ 4.

Jackson immediately reported the incident to defendant Gouldman. Compl. 4, 7. Gouldman states that Jackson described his interaction with Hart as "a sexual advance" by Hart towards Jackson "and that when Jackson refused, Officer Hart began beating [Jackson']s head against the wall." Gouldman Aff. [D.E. 150-2] ¶ 4; cf. Hart Aff. ¶ 4 (acknowledging search of "inmate Jackson's person, which included a search of his groin area" but denying making a sexual advance). Gouldman asked Jackson to describe the incident, and Jackson told Gouldman that "Hart attempted to touch his penis/groin area." Gouldman Aff. ¶ 4. Gouldman advised him "that searching the groin area was part of the search of an inmate." Id. According to Gouldman, "Jackson then became enraged, cursing towards" Gouldman, who "requested that other staff members not involved with this 'alleged' use of force escort [Jackson] to medical for a screening." Id. ¶ 5. Gouldman then "reported [Jackson']s allegation and took pictures to begin the use of force investigation." Id. & Ex. A [D.E. 150-2] 4–22 (incident report); cf. Compl. 4, 7 (alleging that Gouldman conspired with Cozart,

3

Hargrove, and defendant Anderson "to conceal the barbaric assault."). Gouldman commenced the investigation at 10:50 p.m., approximately fifteen minutes after Jackson states the cell search began. See Gouldman Aff., Ex. A, 6.

Defendant Anderson, a prison nurse, examined Jackson less than two hours after the alleged incident and "completed a full examination until [Jackson] refused to continue to participate." Anderson Aff. [D.E. 157] ¶ 6 & Ex. C [D.E. 157] 11 (Anderson's 4/24/13 nursing note). Anderson observed that Jackson ambulated well and without drifting, his speech was clear, and he was able to place his chin to his chest without complaint. [D.E. 150-1] 17 (Anderson's witness statement); see Anderson Aff. ¶¶ 3, 6 & Ex. C. Anderson further noted that Jackson did not appear to have any lacerations on his arm (in contravention to his description of his injuries) and did not observe any other objective signs of injury. Id.; cf. Compl. 4, 7; [D.E. 150-2] 19 (statement by Jackson that "Anderson wouldn't let Sgt. Gouldman take pictures of my lacerated wrists, calling them 'superficial'"). Anderson told Jackson to return to the medical clinic if his headache persisted for more than 24 hours and gave him aspirin to take as needed over the next 48 hours. Anderson Aff., Ex. C. Anderson did not have any further interaction with Jackson. Anderson Aff. ¶ 6.

Defendant Henderson is a prison nurse, and Jackson alleges that she "caused plaintiff to suffer unabated, excruciating pain" following the incident by "deliberately ignor[ing] and suppress[ing]" his medical condition and need for treatment following the use of force incident. [D.E. 12] 3–4; see [D.E. 13] 1–2. Henderson saw Jackson in response to sick call requests on four dates in May 2013[2] and again on August 20, 2013. Henderson Aff. [D.E. 150-5] ¶ 7. On May 20,

---

[2] On May 6, 2013, another nurse examined Jackson after he complained of "[d]izziness, persistent headache and insomnia." The nurse noted that Jackson was able to touch his chin to his chest, was alert and oriented, did not exhibit slurred speech, and his pupils were equal and reactive to light. See [D.E. 150-5] 6. The nurse gave Jackson ibuprofen with instructions to take it as needed over the next 48 hours and advised him on other techniques for relieving his pain. Id. The nurse did

4

2013, Henderson referred Jackson to a physician for his vision complaints and provided him with ibuprofen. Id. ¶ 9 & Ex. A [D.E. 150-5] 7 (nursing note). On May 28, 2013, Henderson again examined Jackson and noted that "the physician had already ordered both an eye exam and an x-ray, which request was pending."[3] Id. ¶ 10 & Ex. A [D.E. 150-5] 8. On May 28, 2013, Jackson submitted a sick call appointment request which did not mention any head or neck pain but requested glasses. Henderson Aff., Ex. A [D.E. 150-5] 10. Henderson informed Jackson that he had to wait for his scheduled eye exam. Id. On August 26, 2013, Jackson refused Henderson's offer of ibuprofen as ineffective to treat his pain, and she referred his medication request to the physician. Henderson Aff. ¶ 9 & Ex. A [D.E. 150-5] 11. Although Henderson did not have any other interactions with Jackson, he continued to receive regular medical attention from other prison medical staff while he was incarcerated at Polk. Henderson Aff. ¶ 10; see [D.E. 136] 7–11 (3/18/15 order describing Jackson's course of medical care in detail).[4]

Henderson "was also involved in responding to two of [Jackson]'s grievances in 2013." Henderson Aff. ¶ 11 & Ex. C. [D.E. 150-5] 15, 19 (Henderson's grievance responses). "For each grievance, [Henderson] reviewed [Jackson]'s complaints and his medical records in formulating a response to educate [Jackson] concerning his complaints regarding care he was receiving at the facility." Henderson Aff. ¶ 11.

---

not refer Jackson or his medical chart to a physician following the examination. Id. Jackson does not name this nurse as a defendant or allege that this nurse participated in the conspiracy with the named defendants.

[3] On May 30, 2013, Jackson received an x-ray which revealed "prominent anterior marginal vertebral osteophyte formation . . . suspected associated with evolving degenerative disc disease." Henderson Aff., Ex. D [D.E. 150-5] 22.

[4] "The medical records demonstrate that Lightsey pursued a course of medical treatment for Jackson based on Lightsey's conclusion that Jackson's symptoms stemmed from arthritic degeneration of his spine rather than an acute injury." [D.E. 136] 12.

5

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

A.

Defendants Henderson and Anderson argue that Jackson failed to exhaust administrative remedies concerning his claims against them before filing suit. Mem. Supp. Defs.' Mot. Summ. J. [D.E. 151] 7–9. The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983 . . . or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84–85 (2006). The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or

6

particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA requires a prisoner to exhaust administrative remedies regardless of the relief offered through administrative procedures. See Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . , unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Failure to exhaust administrative remedies is an affirmative defense that a defendant must plead and prove. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).

Grievances must be sufficient in detail to "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002);[5] see, e.g., Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008). However,

> [a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

Griffin, 557 F.3d at 1120.

Defendants have submitted four grievances Jackson filed between April 24, 2013, the date of the incident, and August 26, 2013, when he filed this action. See Robbins Aff., Exs. [D.E. 150-1] 4–29. On April 26, 2013, Jackson filed a grievance concerning the April 24, 2013 incident, and defendant Anderson provided a statement in response to the grievance investigation. Id. 11–13, 17. On May 16, 2013, Jackson filed a grievance complaining as follows:

> "Swooning, dizziness, bleary vision in conjunction with persistent headache, pain on the left side of my head, ear and base of neck has been constant **since a brutal assault by c/o Hart, 2nd shift on 4/24/13 and the collusive efforts of Segt. Gouldman and [A]nderson at medical to suppress evidence. Remedies at sick**

---

[5] The Second, Fifth, Sixth, Ninth, and Tenth Circuits have adopted the Strong standard. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (collecting cases).

7

**call has been ineffective.** Irreparable brain damage is probable. Therefore, a comprehensive medical examination is imperative to decipher this affliction. Denial of above will equal inadequate medical attention, deliberate indifference and culpability avoidance.

[D.E. 150-1] 22 (emphasis added). Defendant Henderson responded to this grievance and described the course of medical care provided to Jackson, including her own sick call appointment with him on May 20, 2013. Id. 23.

These grievances were sufficiently detailed to alert defendants Anderson and Henderson to the claims in Jackson's complaint. Jackson specifically alleged that defendant Anderson engaged in collusion. Moreover, both defendants knew of their involvement in the acts complained of in Jackson's grievances. Thus, the court declines to dismiss Jackson's claims against these defendants for failure to exhaust administrative remedies.

B.

Next, the court addresses Jackson's claims against Anderson and Henderson arising out of his medical care. To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant know of and purposefully ignore "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; see Makdessi v. Fields, 789 F.3d

8

**call has been ineffective.** Irreparable brain damage is probable. Therefore, a comprehensive medical examination is imperative to decipher this affliction. Denial of above will equal inadequate medical attention, deliberate indifference and culpability avoidance.

[D.E. 150-1] 22 (emphasis added). Defendant Henderson responded to this grievance and described the course of medical care provided to Jackson, including her own sick call appointment with him on May 20, 2013. Id. 23.

These grievances were sufficiently detailed to alert defendants Anderson and Henderson to the claims in Jackson's complaint. Jackson specifically alleged that defendant Anderson engaged in collusion. Moreover, both defendants knew of their involvement in the acts complained of in Jackson's grievances. Thus, the court declines to dismiss Jackson's claims against these defendants for failure to exhaust administrative remedies.

B.

Next, the court addresses Jackson's claims against Anderson and Henderson arising out of his medical care. To establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant know of and purposefully ignore "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; see Makdessi v. Fields, 789 F.3d

126, 133–35 (4th Cir. 2015). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986) abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "[T]o establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); see Iko, 535 F.3d at 241–42.

Jackson has failed to create a genuine issue of material fact concerning whether either Anderson or Henderson was deliberately indifferent to a serious medical need. The medical records demonstrate that Henderson responded to Jackson's requests for medical attention and referred him to the prison physician for further evaluation where appropriate. The medical records also support Anderson's belief that Jackson did not suffer a serious medical injury. Jackson's belief that his condition required further testing and evaluation by a specialist amounts to nothing more than a difference of opinion as to course of treatment, which fails to state a claim of constitutional magnitude. See, e.g., Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (unpublished); Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam).[6] Thus, the court grants summary judgment to defendants Anderson and Henderson and denies Jackson's motion for summary judgment.

---

[6] Tellingly, Jackson's June 7, 2013, grievance states
> The search for a precise etiology of a recently inflicted lesion culminated in cranium x-rays at Central Prison, Raleigh, on 05-30-13. But an EKG (brain wave) test was neglected by medical staff. This test is imperative and will consummate the medical cycle of discovery. One test without the other is a half-measure that reeks of unprofessionalism. Both could have been performed at Central Prison on 05-30-13.

[D.E. 150-1] 26. Despite the involvement of multiple medical professionals in his treatment, the only person who believes Jackson's condition warranted further medical testing is Jackson himself.

9

C.

Next, the court addresses Jackson's excessive-force claim. To show that a prison official violated his Eighth Amendment rights by using excessive force, a prisoner must establish "more than indifference, deliberate or otherwise. The claimant must show that officials applied force maliciously and sadistically for the very purpose of causing harm." Farmer, 511 U.S. at 835. To succeed, the claimant must show that "the officials acted with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotations and alteration omitted); see, e.g., Farmer, 511 U.S. at 834–36.

"The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted); see United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). Factors relevant to the determination of the prison official's state of mind include (1) "the necessity for the application of force," (2) "the relationship between the need for force and the amount of force used," (3) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them at the time," and (4) any "efforts made to temper the severity of the force applied." Tedder v. Johnson, 527 F. App'x 269, 272 (4th Cir. 2013) (unpublished) (quotations omitted); see Whitley, 475 U.S. at 321.

Yet, proof of a malicious or sadistic state of mind alone does not suffice:

[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost

10

certainly fails to state a valid excessive[-]force claim.

Wilkins, 559 U.S. at 37–38 (citations, emphasis, and quotations omitted); see Hudson, 503 U.S. at 9–10; Whitley, 475 U.S. at 319.

The record demonstrates that if defendant Hart applied force, he did so in a good-faith effort to maintain or restore discipline, not maliciously or sadistically for the purpose of causing harm. Jackson acknowledges that the use of force began when Jackson responded to either a "remark" Hart made or to Hart conducting a pat-down search. The entire incident was brief, lasting less than fifteen minutes from the beginning of the cell search to Jackson's report to Gouldman, and Gouldman immediately commenced an investigation and sent Jackson for medical attention. Moreover, the record belies Jackson's description of his injuries. Even viewing the evidence in the light most favorable to Jackson, no reasonable jury could find that Hart had a sufficiently culpable state of mind because no evidence suggests that Hart acted "maliciously or sadistically for the purpose of causing harm." Whitley, 475 U.S. at 321–26; cf. Wilkins, 559 U.S. at 37; Gore, 592 F.3d at 494; Tedder, 527 F. App'x at 274. Likewise, no reasonable jury could find that defendants used force "of a sort repugnant to the conscience of mankind," when the witness statements and medical professional evaluations overwhelmingly discredit Jackson's story by reporting no physical harm. Thus, the court grants defendants' motion for summary judgment and denies Jackson's motion for summary judgment.

In seeking summary judgment, defendants also argue that they are entitled to qualified immunity. See Mem. Supp. Defs.' Mot. Summ. J. [D.E. 75] 18–24. In light of the court's conclusions concerning Jackson's constitutional claims, the court need not address defendants' arguments concerning qualified immunity. Cf. City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774–78 (2015).

III.

In sum, the court GRANTS the remaining defendants' motion for summary judgment [D.E. 150], and DENIES plaintiff's motions [D.E. 160, 165–66, 173]. The clerk shall close the case.

SO ORDERED. This _9_ day of November 2015.

JAMES C. DEVER III
Chief United States District Judge